UNITED STATES DISTRICT COURT
NORTHISN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICHAEL R. BENSON,

        Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of the Social Security
Administration,

        Defendant.

CAUSE NO. 3:20-CV-220 DRL

## OPINION AND ORDER

Michael R. Benson, an adolescent at the time of his application but an adult at the time of the administrative decision, appeals from the Social Security Commissioner's final judgment denying disability insurance benefits. Mr. Benson requests remand of his claim for further consideration. Having reviewed the underlying record and the parties' arguments, the court grants Mr. Benson's request and remands the Commissioner's decision.

## BACKGROUND

Mr. Benson is a young man who suffers from a variety of physical impairments. His physical impairments include multiple progressive hemangiomas located on his buttocks, his back, his hands, underneath one eye, on the base of his right toe, and other places, as well as obesity [R. 20, 28, 50-51]. Mr. Benson's back hemangioma covers approximately 70 percent of his back, protrudes several centimeters from the skin's surface, and is "especially friable," meaning easily crumbled or marked by erosion or bleeding [R. 330]. Mr. Benson also had trouble paying attention at school, a poor memory, fatty liver disease, and trouble regulating his body temperature [R. 48, 54, 213, 334, 342]. Mr. Benson dropped out of high school his senior year, has yet to complete a GED, is not licensed to operate a motor vehicle, and has never been employed [R. 46-47].

In 2016, when Mr. Benson was under the age of 18, his mother filed a Title XVI application for benefits on his behalf, alleging disability beginning at his birth in 1999 [R. 77]. The application was denied initially and again on reconsideration [R. 86, 96]. Mr. Benson appealed the decision to an administrative law judge (ALJ), ALJ Romona Scales; and a hearing was held on September 5, 2018 [R. 38]. On March 28, 2019, the ALJ denied Mr. Benson's petition on the basis that he could not show that he was disabled as defined by the Social Security Act [R. 35-36].

The ALJ found that Mr. Benson was not disabled before the age of 18; and, since attaining the age of 18, Mr. Benson had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) & 416.967(b) with the following limitations: lift no more than twenty pounds occasionally with frequent lifting or carrying of objects up to ten pounds; to stand and/or walk for about six hours of an eight-hour workday and to sit for about six hours of an eight-hour workday; frequently balance and stoop; occasionally climb, kneel, crouch, and crawl; and never climb ladders, ropes, or scaffolds [R. 29-31]. "He should avoid concentrated exposure to extreme temperatures, wetness, and humidity . . . [and] have no exposure to hazards such as moving machinery; unprotected heights; or slippery, wet, or uneven surfaces" [R. 30]. The ALJ also found that Mr. Benson could perform a number of jobs in the national economy including marker, cafeteria attendant, and sales attendant [R. 31]. This decision became final when the Appeals Council denied Mr. Benson's request for review [R. 1]. He then appealed here.

## STANDARD

The court has authority to review the Appeal Council's decision under 42 U.S.C. § 405(g). Because the Appeal Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence which "a reasonable mind might accept

as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge between the evidence and [the] conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## DISCUSSION

Mr. Benson turned 18 after his initial application but before the ALJ's final determination. The ALJ was thus required to assess his application under the rules for determining disability in children until he turned 18, and the rules for determining disability in adults after he turned 18. *See* 20 C.F.R. § 416.924(f).

When considering a child claimant's eligibility for disability benefits, the ALJ must apply the following three-step evaluation process: (1) if the child is engaged in substantial gainful activity, he is not disabled regardless of the medical findings; (2) if a child's impairments are not severe (by not significantly limiting his ability to perform basic work activities), he is not disabled; and (3) if the child's impairments meet, medically equal, or functionally equal an impairment described in the children's listings, he is disabled. *See* 20 C.F.R. §§ 416.924(b)-(d).

To assess a child's functional equivalency, the ALJ must consider the claimant's impairments in the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b). The impairment will be functionally equal to a listing if a child has a "marked" limitation in two of these domains, or an "extreme" limitation in one domain. *See* 20 C.F.R. § 416.926a(d). If functional equivalency is found,

3

the ALJ must consider all medically determinable impairments, and their interactive and cumulative effects regardless of severity, on any effected domain. *See* 20 C.F.R. § 416.926a(a), (c).

When considering an adult claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do his impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed as conclusively disabling, given the claimant's residual function capacity, is the claimant unable to perform his former occupation; (5) is the claimant unable to perform any other work in the national economy given his age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Young v. Sec'y of Health & Hum. Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, when the burden shifts to the Commissioner to prove that the claimant can perform work in the economy. *See Young*, 957 F.2d at 389.

The ALJ concluded that Mr. Benson was not disabled despite having two impairments: multiple progressive hemangiomas and obesity [R. 12, 20-21]. Mr. Benson challenges this conclusion, advancing two arguments: (1) the ALJ erred in evaluating the medical opinion evidence, and (2) the ALJ erred in evaluating Mr. Benson's symptoms and limitations, specifically not considering contradictory evidence on the childhood domain factors, the impact of Mr. Benson's obesity on his overall medical condition, or Mr. Benson's young adult status on his adult disability determination.

    A.    *The ALJ Erred in Assessing Whether the Treating Physicians' Opinions Should be Given Controlling Weight.*

Mr. Benson asserts that the ALJ didn't properly analyze or assign weight to various medical expert opinions [ECF 15 at 19]. He says the ALJ didn't develop a record or explain why ambiguities mattered, didn't consider the regulatory factors for disregarding medical opinions, and didn't place the opinions in context [*Id.* 20-24]. The government responds by arguing that inconsistencies between the record and the medical opinions justified the provision of little weight [ECF 16 at 7].

4

The ALJ considered records from three providers: Dr. Daniel Edquist, Mr. Benson's primary care physician; Dr. Laura Hoffman, a dermatologist Mr. Benson saw on one occasion; and Dr. Robert Sklaroff, an independent physician who reviewed Mr. Benson's medical records by request from the ALJ but did not see or treat Mr. Benson.

Dr. Edquist, who saw Mr. Benson on several occasions from July 2015 to June 2018, initially described Mr. Benson's hemangiomas as large but stable [R. 284]. He eventually recommended a plastic surgery evaluation; but Mr. Benson did not pursue this treatment [R. 313]. In 2016, Dr. Edquist noted the hemangiomas were spreading, and new growths appeared on his face and arm [R. 317]. In 2017, Dr. Edquist again noted that the hemangiomas had grown, but described them as not painful, and referred Mr. Benson to a dermatologist [R. 333].

Dr. Hoffman, a dermatologist, saw Mr. Benson in 2017 and noted that his hemangiomas, described by Dr. Hoffman as tumors, were "so large that they literally cover almost 99% of his buttocks and 70% of his back" and the back tumors were "especially friable and protrude out several centimeters from the skin surface" [R. 330]. Dr. Hoffman noted that the tumors were "painful with any prolonged pressure and are at risk of bleeding or ulcerating from such pressure or mechanical injury" [*Id.*]. This pain and risk "would prevent [Mr. Benson] from any long term sitting, lifting, bending, or strenuous work . . . [and] prevent [Mr. Benson] from being able to sit for long periods" due to a history of the hemangiomas "causing pain with pressure" [*Id.*].

Mr. Benson returned to Dr. Edquist in 2018 for a disability assessment. Dr. Edquist noted that Mr. Benson reported his hemangiomas weren't painful, but that he couldn't remain "upright much more than 20 min[utes] before pain [became an] issue" [R. 348].

Over the course of Mr. Benson's appeal, the ALJ contacted Dr. Sklaroff. Dr. Sklaroff reviewed Mr. Benson's medical records from Dr. Edquist and Dr. Hoffman. Dr. Sklaroff concluded that Mr. Benson's hemangiomas did not impact his ability to stand, walk, or lift [R. 383].

5

After reviewing the statements made by the physicians, the ALJ gave "little weight" to the conclusions of Dr. Edquist and Dr. Hoffman and "great weight" to Dr. Sklaroff's conclusions [R. 24-25]. The ALJ explained this credibility determination by highlighting that Dr. Edquist's statements about Mr. Benson's pain and ability to lift weight conflicted with the record in which he noted that the hemangiomas were not painful [R. 25]; and that Dr. Hoffman's specialty, her limited history with Mr. Benson, and her potential willingness to help (or be bullied into providing) Mr. Benson with the required paperwork for his disability claim undercut her credibility [*Id.*]. Whereas the ALJ concluded that Dr. Sklaroff was credible, despite never examining Mr. Benson, because he is a hematologist who reviewed the entire record [R. 23-24].

In determining whether a claimant is entitled to disability benefits, the opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 416.927(c)(2);[1] *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). If the treating physician's opinion "is well supported and there is no contradictory evidence, there is no basis on which the administrative judge, who is not a physician, could refuse to accept it." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Though an ALJ has to support her decision to reject a treating physician's opinions as controlling, and cannot ignore entire lines of contrary evidence, *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012), the ALJ isn't required to mention every piece of evidence, *see Craft*, 539 F.3d at 673.

---

[1] The treating physician rule, codified at 20 C.F.R. § 416.927(c), was changed by the Social Security Administration in 2017. 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). The new rule, which became effective on March 27, 2017, applies to benefit applications filed on or after that date. *Id.* As Mr. Benson's application was filed in 2016, the court applies the pre-2017 rule.

If the ALJ provides good reasons why the testimony of the treating physician is not well supported or is inconsistent with the record, the ALJ does not need to give this testimony controlling weight. 20 C.F.R. § 416.927(c)(2). But the ALJ cannot just disregard the evidence; the ALJ still must assess the treating physician's statements using the same factors used to assess other medical evidence including evidence from non-treating physicians. 20 C.F.R. § 416.927(c)(2). These factors include the nature of the examining relationship, the treatment relationship (including length of the treatment relationship and the nature and extent of the treatment relationship), the opinion's supportability, the opinion's consistency, and the physician's specialization. 20 C.F.R. § 416.927(c)(1)-(6).

An ALJ must support her comparative assessment of providers with substantial evidence but does not need to be so detailed as to discuss and critically weigh each factor provided for in the regulations. *See Collins v. Berryhill*, 743 Fed. App'x 21, 25 (7th Cir. 2018). "If the ALJ discounts the physician's opinion after considering these factors, [the court] must allow that decision to stand so long as the ALJ minimally articulate[d] [her] reasons—a very deferential standard that we have, in fact, deemed lax." *Elder*, 529 F.3d at 415 (quotations omitted). Even so, an ALJ's decision to accept one physician's opinion over another's without consideration of the regulatory factors is grounds for reversal. *See Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

The ALJ didn't just discount the medical opinion of one treating physician, she discounted two: Dr. Edquist, Mr. Benson's primary care physician, and Dr. Hoffman, Mr. Benson's dermatologist. Accordingly, she needed reasons supported by substantial evidence for each. *See* 20 C.F.R. § 416.927(c)(2); *Gudgel*, 345 F.3d at 470.

1. *Dr. Daniel Edquist.*

The ALJ discounted Dr. Edquist's opinion because "it [was] not clear" when or how he diagnosed Mr. Benson with chronic pain [R. 25]. The ALJ also found it was "not clear" from Dr. Edquist's notes if Mr. Benson "must lie down for all but 40 minutes every 8 hours or if he just means

7

that he thinks [Mr. Benson] must alternate positions every 20 minutes," a discrepancy between what Dr. Edquist and what Mr. Benson reported he could lift (no more than five pounds in eight hours and five to ten pounds respectively) [R. 25]. The ALJ noted that no objective observations or tests were set forth by Dr. Edquist, and no pain medication was prescribed [R. 25].

The ALJ also discounted Dr. Edquist's opinion because Dr. Edquist only noted pain when Mr. Benson approached the doctor to have a disability form completed on June 8, 2018 [R. 348]. At this time, Dr. Edquist noted pain from Mr. Benson's hemangiomas when he was upright for more than 20 minutes [R. 348]. Mr. Benson reported that the hemangiomas had grown larger [*Id.*]. Dr. Edquist's findings included "new lesions," including new hemangiomas on arm and side of face outside of those large ones on his back and buttocks [*Id.*]. Mr. Benson argues that the ALJ cannot rely on only the notes from this visit, specifically that the hemangiomas were not painful, outside of the context of the whole record [ECF 15 at 21].

An ALJ must "minimally articulate [her] reasons for crediting or rejecting evidence of disability." *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). These reasons must be supported by substantial evidence in the record, *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014), a record the ALJ must develop fully and fairly, *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991).

The first two reasons the ALJ gave about Dr. Edquist's conclusions are based on ambiguities in the record—a record it was the ALJ's duty to develop fully and fairly. *See Thompson*, 933 F.2d at 585; *see also Herrmann v. Colvin*, 772 F.3d 1110, 1111 (7th Cir. 2014) (an ALJ "th[inking] that a physician's evidence can be disregarded unless he has detailed notes to back it up and other physicians provide identical evidence even if they don't contradict him—in other words no credibility without corroboration. . . . [is] insufficient grounds for disbelieving the evidence of a qualified professional."). Something that isn't clear is a call to develop the record, not a call to discredit a treating physician.

8

Further, the ALJ's implication that asking for a disability form undermines a treating provider's opinion strikes of speculation. *See Herrmann*, 772 F.3d at 1111. The ALJ didn't explain how or why the act of requesting a disability form invalidated Dr. Edquist's opinions. The implication is, as the ALJ discussed vis-à-vis Dr. Hoffman, that Dr. Edquist was too sympathetic, else there was little reason to note this at all. *See Rockwell v. Saul*, 781 Fed. Appx. 532, 537 (7th Cir. 2019) (noting that a belief that a doctor is lying to the SSA to get benefits for his or her patient is not a sound reason to discredit the opinion without evidence).

In assessing the weight to be given to Dr. Edquist's opinions, the ALJ correctly observed that in the past Mr. Benson reported that his hemangiomas weren't painful, but the ALJ seems not to have grappled with why Dr. Edquist ordered a surgical consult for the hemangiomas [R. 313], his statement that the hemangiomas have grown larger and spread, or that being upright causes pain after 20 minutes [R. 348]. That line of evidence cannot be disregarded merely based on Mr. Benson's request for a disability evaluation from the doctor, not on this record. *See Rockwell*, 781 Fed. Appx. at 537.

The ALJ worked hard to capture Mr. Benson's medical history, including when he did and didn't report pain to his treating physicians. That said, corroborating Dr. Edquist's most recent opinion about pain, Dr. Hoffman (a dermatologist) opined that the hemangiomas were painful when pressure was applied when Mr. Benson sat, lifted, bent, or engaged in strenuous work [R. 330]. She noted that they weren't painful when Mr. Benson avoided putting pressure on them, like when he would lay on his stomach [R. 56-57]. It is not the court's role to reevaluate the evidence, but merely to concur that the ALJ hasn't developed a record for affording little weight to Dr. Edquist or rejecting this treating physician's conclusion that the hemangiomas had become worse and painful. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) ("Although the ALJ need not discuss every piece of evidence in the record, [she] must confront the evidence that does not support [her] conclusion and explain why it was rejected.").

9

The ALJ also noted that Dr. Edquist prescribed no pain medications to Mr. Benson and conducted no objective medical tests to gauge his purported pain. Though this information may well be the start to support her conclusion not to give Dr. Edquist's opinion controlling weight, the ALJ didn't explain the significance of the Dr. Edquist's lack of tests, or further develop the record in any way, particularly when clouded by the other errors that have been identified here. It would seem quite unusual for a patient suffering from a painful condition not to receive some pain medication, if nothing else a recommendation to take over-the-counter pain relievers, but that again is all the more reason to have developed the record as to when or how Dr. Edquist diagnosed Mr. Benson with chronic pain rather than have left the record undeveloped and called it "unclear." *See Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) ("An ALJ who chooses to reject a treating physician's opinion must provide a sound explanation for the rejection.").

The ALJ soundly rebutted Dr. Edquist's conclusion that Mr. Benson could lift no more than 5 pounds in an 8-hour period, particularly when Mr. Benson testified that he could lift 5-10 pounds [R. 25]. The ALJ never extrapolated from that fair point to explain how this discrepancy undermines Dr. Edquist's conclusion about Mr. Benson's hemangiomas or the pain he experiences, if in fact that observation by the ALJ was even meant to do so. *See Clifford v. Apfel*, 227 F.3d 863, 869-70 (7th Cir. 2000) ("ALJ did not provide any explanation for his belief that [the claimant's ability to walk several blocks and perform chores was] inconsistent with [the treating physician's opinion that the claimant is limited in her ability to perform work requiring standing and walking] and his failure to do so constitutes error"). For these reasons, the court must remand to afford a credibility assessment based on a developed record and logical bridge.

    2. *Dr. Laura Hoffman.*

The ALJ further discounted Dr. Hoffman's opinion. Dr. Hoffman treated Mr. Benson on one occasion in 2017 after Dr. Edquist's referral [R. 330, 333]. Dr. Hoffman noted that the hemangiomas

had recently grown—now covering 70 percent of his back and 99 percent of his buttocks, could be painful when pressure was applied, were especially friable (easily crumbled), and prevented him from "long-term sitting, lifting, bending, or strenuous work" [R. 24-25, 330]. The ALJ gave this opinion little weight because Dr. Hoffman only saw Mr. Benson once, never qualified what she meant by "long-term," was not "a surgeon or vascular specialist," and presents non-medical opinions that "would direct the determination or decision of disability" [R. 25].

Undergirding these conclusions is the troubling assertion that Dr. Hoffman's opinions were somehow coerced to "avoid unnecessary provider/patient tension" [R. 24-25]. The ALJ said this coercion is more likely to occur when the doctor's findings contradict the medical record but didn't explain any inconsistency between Dr. Hoffman's opinions and the record, including those specifically related to the friable nature of Mr. Benson's lesions [R. 330], the new growth of the hemangiomas [*id.*], or that the hemangiomas become "painful with any prolonged pressure and are at risk of bleeding or ulcerating from such pressure or mechanical injury" [*id.*]. But even more so, the ALJ's conclusion about Dr. Hoffman's susceptibility to undue influence or an alleged scheme was purely speculative, unsupported by any record evidence, and thus not a good reason to disregard a medical opinion. *See Rockwell*, 781 Fed. Appx. at 537. The ALJ all but seemed to recognize this nonetheless, sharing that it remained "difficult to confirm the presence of such motives," but "the possibility always exists" [R. 25]. A claimant deserves consideration of evidence, not speculative motives. It is impossible to unentangle this reason for the ALJ's decision from any other.

Other issues confound the rationale behind the ALJ's treatment of Dr. Hoffman's opinions. The criticism levied about Dr. Hoffman's lack of specificity about how long Mr. Benson could stand was again a call to develop the record. *See Thompson*, 933 F.2d at 585. The ALJ also took issue with some of Dr. Hoffman's statements that the ALJ painted as legal conclusions that "would direct the determination or decision of disability" [R. 25], but never identified which statements or why that

11

militated against weight for this doctor's opinions. For instance, Dr. Hoffman opined that Mr. Benson's "lesions have a history of causing pain with pressure and severely limiting the patient's mobility" [R. 330]. Aside from not being in any measure a legal conclusion, the record lacks an explanation for how this statement undermines Dr. Hoffman's opinions. The ALJ cited to 20 C.F.R. § 416.927(d), which provides that if a doctor says a patient is disabled or unable to work, such an opinion isn't dispositive. That remains true, but the ALJ must still wrestle with the evidence without dismissing it as merely coerced or pressured. *See Jelinek*, 662 F.3d at 811 ("ALJ who chooses to reject a treating physician's opinion must provide a sound explanation for the rejection").

If the ALJ does not conclusively rely on the opinions of the treating physician, the ALJ is required to consider other factors, including the provider's specialty, when weighing the medical evidence. Here, despite not explaining why she was not giving Dr. Hoffman's opinions controlling weight, the ALJ conclusively stated that she gives more weight to the independent hematologist who reviewed Mr. Benson's record at the ALJ's request, Dr. Sklaroff, than to Dr. Hoffman. The reason for this, according to the ALJ, is that she was "more persuaded by the hematologist's opinion [than the dermatologist's opinion] of hematomas" [R. 25]. Absent from this record is any explanation why a hematologist who has never seen the patient should be elevated over a dermatologist who has—any explanation why that specialty supersedes the other. This leaves the record without a logical bridge. For these reasons, remand is inevitable.

      B.     *Other Allegations of Error.*

Mr. Benson's allegations of error are related to the ALJ's assessment of his childhood domain findings; whether his impairments, serious and non-serious, were functionally equivalent to a listed impairment; and the ALJ's consideration of his youth when assessing his adult disability status [ECF 15 at 13-17]. The government doesn't respond and defend against these claims or error. The court addresses only the first two, finding the landscape for the other one likely altered on remand.

12

1. *The ALJ Did Not Consider Contradictory Evidence When Assessing Mr. Benson's Childhood Domains.*

Mr. Benson argues that the ALJ didn't refer to the testimony of Mr. Benson or his mother, Mr. Benson's ISTEP results, or other school reports when the ALJ summarized the evidence and analyzed her childhood domain findings [ECF 15 at 14-15]. Mr. Benson argues this is error because the ALJ only relied on a statement from Mr. Benson's school counselor (who did not know of Mr. Benson's condition) noting that Mr. Benson could be "lazy" [R. 26] and statements by Mr. Benson's English teacher [*see, e.g.*, R. 27-29].

When an ALJ makes a finding in a childhood functional equivalence domain, the ALJ looks to how "appropriately, effectively, and independently [the child] perform[s] [his or her] activities compared to the performance of other children." 20 C.F.R. § 416.926a(b). Activities includes everything a child does at home, school, and in his or her community. *Id.* This finding is based on opinions from medical sources, parents, teachers, or others who see the child functioning in the community. 20 C.F.R. § 416.926a(b)(3). An ALJ does not have to evaluate every item of evidence in the record, but "the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

The ALJ based her childhood domain findings on the reports of Mr. Benson's guidance counselor and English teacher to reach the conclusion that his limitations didn't functionally equal a listing [R. 26-29]. The ALJ didn't discuss or acknowledge the testimony of Mr. Benson's mother, Mr. Benson, or any of his medical providers, when making these findings despite its contradictory nature. For example, the guidance counselor's statement that Mr. Benson could be lazy and not turn in his assignments [R. 188] was contradicted by Mr. Benson's statement that the pain and discomfort of his condition prevented his ability to think well [R. 58] and his mother's statement that his condition affects his ability to complete tasks and his concentration [R. 213]. This court doesn't decide credibility; that duty remains firmly within the ALJ's province so long as she explains why she favors one line of

evidence over the other. *See Moore*, 743 F.3d at 1123; *see also Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (concerning ALJ's consideration of symptom testimony); *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988) (requiring some minimum level of explanation). When the other issues are addressed on remand, so can this one in light of the record at that time.

> 2. *The ALJ Didn't Explain the Impact of Mr. Benson's Obesity on his Overall Medical Condition.*

Next, Mr. Benson challenges the ALJ's characterization of his obesity by not "consider[ing] the confounding effects of [his] weight or the potentially exacerbating effects of [his] fatty liver disease," and his hemangiomas [ECF 15 at 14, 15-16]. Mr. Benson says the ALJ committed reversable error when she "did not analyze the effect of [Mr. Benson]'s weight on his functional abilities and instead only listed his BMI and the SSR [relating to weight] only in passing" [ECF 15 at 16].

"For a child applying for benefits under title XVI, [an ALJ] may evaluate the functional consequences of obesity (either alone or in combination with other impairments) to decide if the child's impairment(s) functionally equals the listings." SSR 02-1p, 2002 SSR LEXIS 1, 17-18 (Sep. 12, 2002).[2] Further, when assessing an adult claim, an ALJ "will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing." *Id.* at 12-13. Examples of impairments, in combination with obesity, that may meet the requirements of a listing include musculoskeletal, respiratory, and cardiovascular impairments, as well as other coexisting or related impairments, including mental disorders. *Id.* at 13. An ALJ must factor in obesity when determining the aggregate impact of the claimant's impairments on his RFC. *Arnett*, 676 F.3d at 593. If an ALJ finds that a claimant's obesity neither causes nor contributes to additional functional restrictions, she must explain how she reached that conclusion. *Id.*

---

[2] This policy interpretation ruling was rescinded and replaced by SSR 19-2p, 2019 SSR LEXIS 2, effective May 20, 2019; however, SSR 02-1p was the operative policy interpretation ruling at the time of Mr. Benson's application in 2016 and the ALJ's decision on March 25, 2019.

14

The record indicates that Mr. Benson is obese (that is, he had a BMI above 40), with his BMI ranging from 43.08 to 48.35 [R. 299, 327]. Indeed, the ALJ listed Mr. Benson's BMIs over three years and quoted from SSR 02-1p, which states that individuals with high BMIs are at the greatest risk for developing obesity-related impairments [R. 23-24]. After explicitly saying that she considered Mr. Benson's obesity in relation to his musculoskeletal, respiratory, and cardiovascular body systems [R. 21], the ALJ found that Mr. Benson's obesity was a severe impairment [R. 20] and that it was reasonably related to the claimant's allegations of pain and restriction [R. 23]. She nonetheless concluded that Mr. Benson did not have any impairments, or combination of impairments, that were functionally equal to a listing or that met the requirements of a listing [R. 30].

However, an ALJ cannot simply conclude obesity is a severe impairment, and then not consider the impact of obesity on other conditions that may not be independently severe. *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004) ("Maybe the administrative law judge thought that since he had already ruled that [claimant's] obesity was a severe impairment of her ability to work, though not totally disabling in itself, . . . [other] conditions caused or aggravated by obesity were irrelevant. That of course would be wrong."). Despite acknowledging that Mr. Benson's obesity was considered in relation to Mr. Benson's musculoskeletal, respiratory, and circulatory systems, and that his obesity related to his pain and mobility restrictions, the ALJ seems not to have considered how Mr. Benson's weight impacted other impairments, including any non-severe impairments, on this record. The government offers no defense on this point to aid the court in seeing how this was done. The ALJ must consider the impact of obesity on a claimant's medical situation as a whole, *see Barrett*, 355 F.3d at 1068, including on any mental disorders, *see* SSR 02-1p, 2002 SSR LEXIS 1, at 13, and must explain, after this consideration, that the cumulation of Mr. Benson's medical impairments still do not impact his ability to work, *see Arnett*, 676 F.3d at 593. This issue will need to be addressed on remand.

15

CONCLUSION

Accordingly, the court GRANTS Mr. Benson's request for remand [ECF 1] and REMANDS the Commissioner's decision for consideration in light of this ruling.

SO ORDERED.

August 16, 2021

*s/ Damon R. Leichty*
Judge, United States District Court

16